NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| C.H., Individually and o/b/o M.H., | CIVIL ACTION No. 05-39 (HAA) |
| Plaintiff, | |
| -v- | **OPINION AND ORDER** |
| JEFFERSON TOWNSHIP BOARD OF EDUCATION, | |
| Defendant. | |

C. H.
c/o Total Envolvement
P.O. Box 172
Malaga, New Jersey 08328
*Plaintiff, Pro Se*

Robert M. Tosti, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
33 Washington Street
Newark, New Jersey 07102-3107
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

     This matter comes before the Court on the *pro se* motion of Plaintiff for attorneys' fees and related costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. For the reasons outlined below, Plaintiff's motion is DENIED without prejudice to the resubmission of a properly supported motion, as described below.

*Background*

Plaintiff, C.H., a *pro se* litigant[1] acting on behalf of his son, M.H., a sixth-grade student, brought this suit against the Jefferson Township Board of Education ("Board") seeking attorneys' fees pursuant to the fee-shifting provision of the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I), which provides that a court "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." Specifically, Plaintiff is seeking an award of consultant fees claimed by "Total Envolvement," an educational consulting firm retained by Plaintiff for the purpose of assisting him to "pursue educational remedies with respect to [his] son." (Compl. ¶ 6.) Plaintiff retained Total Envolvement on July 22, 2004 after filing a request with the New Jersey Department of Education for a due process hearing to determine whether the IDEA entitled M.H. to additional educational aids and services. (*Id*.)

Total Envolvement is an entity headed by Tracee Edmondson that offers consulting and advocacy services. Total Envolvement's invoice indicates that Ms. Edmondson performed 42.8 hours of work on Plaintiff's behalf from July through September 2004, encompassing several consultations with Plaintiff, review of M.H.'s file, compilation of a "technical report," attendance at an administrative hearing, "settlement paperwork," and attendance at an Individualized Educational Plan ("IEP") meeting. (Compl., Ex. B.) Plaintiff's bill totaling $14,980.00 reflects an hourly rate of $350 charged by Total Envolvement for these services. (*Id.*)

A due process hearing was scheduled for August 31, 2004. On the date of the hearing, the parties conferred and entered into a settlement agreement, obviating hearing and decision on

---

[1] It is not lost upon this Court that, while plaintiff is proceeding *pro se*, the address given for Plaintiff on the Court's docket and on all filings in this matter is the post office box for Total Envolvement, the consulting firm allegedly retained by Plaintiff.

the merits by an administrative law judge ("ALJ").  Under the agreement, the Board agreed to modify M.H.'s IEP and provide him with additional educational aids and services.[2]

The ALJ memorialized the parties' agreement in a document dated October 8, 2004, entitled "Final Decision, Settlement" (hereinafter "October 8 Order") which notes that the "terms of the settlement were placed on the record" (Compl., Ex. A at 1), and contains the following statement by the ALJ: "I CONCLUDE that this agreement meets the requirements of N.J.A.C. 1:1-19.1 and that the settlement should be approved.  I approve the settlement and, therefore, ORDER that the parties comply with the settlement terms and that these proceedings be concluded" (*id*. at 2-3).  The document also states that the "decision is final pursuant to 20

---

[2]The terms of the settlement are as follows:

The School District will classify M.H. as multiply disabled, including other health impaired, visually impaired and a note on his condition.  The IEP will be amended to define the Excel Program, which will emphasize exactly what the program will do and will not do.  During the Excel Program M.H.'s homework weaknesses will be addressed.  Specifically the social studies and the science homework will take preference over the other homework.  When the homework is completed, M.H. will be able to hand in the assignments to the appropriate instructor.  In the event that there is no social studies or science homework, then the other class work will take preference. In addition, the Excel Instructor will be responsible for documenting what homework has been completed during this period and what has not been completed. And further, two copies of all homework tools will be provided to M.H.  One will be stapled in the Agenda Book, and another copy will be placed in the homework folder. The School District will provide redirection to M.H. according to the recommendations made by Dr. Chang.  He will receive one-on-one redirection in all non-special class programs.  A Progress Report will be provided to the parents every two weeks on the amount of and frequency of redirection.  The IEP will be amended to include locker clean up time.  The parents will be permitted to come into the school every Friday at dismissal, at the parents' discretion to clean out M.H.'s locker.  After two marking periods an IEP meeting will convene to determine the success of these amendments.  An IEP meeting will convene before September 20, incorporate the settlement terms into the IEP.

(Compl., Ex. A at 2).

3

U.S.C.A. § 1415(i)(1)(A) and 34 C.F.R. § 300.510," instructs the parties that they may appeal this decision by filing a complaint in either state or federal court, and indicates that either party may write to the "Director, Office of Special Education Programs" if they "feel[] that this decision is not being fully implemented." (*Id.*)  The document also contains the ALJ's signature. (*Id.*)

Plaintiff filed a one-count Complaint in this Court in January 2005 describing the settlement, the October 8, 2004 Order, and indicating that pursuant to the IDEA, 20 U.S.C. § 1415(e), "a Court may award reasonable fees and related costs, including expert and consultant fees, to the parents of a child with a disability who is the prevailing party."  (Compl. ¶ 11.)  The Complaint attached Ms. Edmondson's resume and an invoice for services totaling $14,980.00. Notably, the Complaint does not indicate that Plaintiff entered into any agreement with Ms. Edmondson or Total Envolvement to pay such fees as is indicated on the invoice from Total Envolvement, nor that Plaintiff has actually paid such fees and is seeking reimbursement for such fees.

Plaintiff filed the instant motion simultaneously with the Complaint in this action. Plaintiff filed no moving brief in support of the motion, though Plaintiff did file a reply brief after receiving opposition from the Board.  In light of the fact that Plaintiff is appearing *pro se*, this Court will not deny the motion simply because of Plaintiff's failure to file a brief in accordance with the Federal Rules of Civil Procedure.  In order to flesh out the factual premise for the motion, this Court will rely upon the allegations of and exhibits to the Complaint.[3]

---

[3] The Court's indulgence for Plaintiff's procedural missteps will not extend to Plaintiff's request, asserted for the first time in Plaintiff's reply brief, that this Court should enter default judgment against the Board based on its failure to serve an answer "within 20 days after being

*Analysis*

I.   **State Law Does Not Bar Plaintiff From Receiving Expert Fees Under IDEA's Fee-Shifting Provision**

Special rules govern the availability of awards under the IDEA's fee-shifting provision to compensate non-attorneys who provided assistance to prevailing parties at the administrative level. While the New Jersey Administrative Code authorizes non-attorneys to represent parents of disabled children at administrative proceedings, the lay advocate must apply to the state for permission to engage in such representation and submit a Notice of Appearance/Application certifying that "he or she . . . is not receiving a fee for the appearance." N.J. Admin. Code § 1:1-5.4(b)(4)(vii). In *Arons v. New Jersey State Board of Education*, 842 F.2d 58 (3d Cir. 1988), the Third Circuit held that this rule precludes a lay advocate from receiving fees for his or her performance of "traditional representation functions" during special education hearings, even though federal law authorizes courts to award attorneys' fees to parties who prevail at such hearings and does not expressly exempt parties represented by lay advocates. *Id.* at 62-63. Although acknowledging the absence of express language in the IDEA barring the award of

---

served with the summons and complaint." Fed. R. Civ. P. 12(1)(a). The Board notes that it had no obligation to serve an answer because it was never served with a summons pursuant to Fed. R. Civ. P. 4(c). Neither of the parties indicates the manner by which the Board was served with the complaint, and Plaintiff has not filed a return of service with the Clerk.

Plaintiff's request for the entry of a default judgment is procedurally infirm, as Plaintiff has failed to comply with the prerequisite step of requesting the entry of default by the Clerk of the Court pursuant to Fed. R. Civ. P. 55(a). Moreover, Even if it were proven that the Board delayed in filing an answer after being properly served with a summons and complaint, the Board's timely response to Plaintiff's motion for fees indicates the Board's willing participation in this matter, and militates against the harsh sanction of a default judgment. This is consistent with the Third Circuit's teaching that entry of a default judgment is not favored and that doubtful cases be resolved in favor of the non-moving party. *United States v. $ 55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

attorneys' fees to lay advocates, the court in *Arons* stated it was "not convinced that Congress intended to limit the states' traditional control over the practice of law." *Id.* at 63.  New Jersey's decision to promulgate a rule barring lay advocates from receiving fees for legal representation at state special education hearings was a valid exercise of this authority because the rule "furthers the state's legitimate interest in regulating the practice of law by nonlawyers." *Id.* at 60.

Thus, state law precludes a lay advocate from receiving fees for "legal representation" of a party during a special education hearing.  However, courts in this circuit have interpreted the IDEA's fee-shifting to authorize the award of reasonable expert fees to a prevailing party provided the expert work was essential to the preparation of the plaintiff's case.  *See, e.g.*, *id.* at 62; *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 267 (D.N.J. 2000).  Therefore, even though a state regulation prohibits lay advocates from receiving fees for legal representation in IDEA due process proceedings, neither state nor federal law categorically bars those same individuals from receiving fees for work performed as an expert or consultant in preparation for such hearings.

## II.    Plaintiff Qualifies as a Prevailing Party

Attorneys' fees and expert fees are only available under IDEA to a "prevailing party."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the United States Supreme Court defined a prevailing party as "one who has been awarded some relief by the court" by way of either a judgment on the merits of a case or a court-ordered consent decree.  *Id.* at 603-04.  Although the Court in *Buckhannon* was considering a motion for attorneys' fees brought under the Fair Housing Amendments Act and the Americans with Disabilities Act, the definition of

"prevailing party" articulated in that case has been held to apply also to the IDEA's fee-shifting provision. *John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 556-57 (3d Cir. 2003). *Buckhannon* narrowed the definition of prevailing party as previously recognized by the Third Circuit in cases such as *Wheeler v. Towanda Area School District*, 950 F.2d 128 (3d Cir. 1991), which broadly defined that term to encompass plaintiffs who obtained some measure of relief where "there [was] a causal connection between the litigation and the relief from the defendant." *Id.* at 131. After *Buckhannon*, therefore, fewer plaintiffs who obtain settlements after initiating litigation qualify as prevailing parties under federal fee-shifting statutes.

      **A.    The Settlement Agreement Created a Material Alteration in the Legal Relationship between the Parties and Secured the Relief Sought by Plaintiff**

A threshold issue concerns whether Plaintiff actually prevailed by obtaining a settlement with the Board. In order for a plaintiff to be deemed a prevailing party by virtue of a favorable settlement, the settlement must have established a "material alteration of the legal relationship of the parties." *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 164 (3d Cir. 2002) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Specifically, "a litigant must demonstrate that he obtained relief on a significant claim in the litigation, that such relief effected a material alteration in his legal relationship with the defendant and that the alteration is not merely technical or de minimis in nature." *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 593 (3d Cir. 2000).

The Board argues that the settlement provided Plaintiff with only technical or de minimis relief because Plaintiff failed to obtain the "primary benefit sought." (Def.'s Br. 7.) But in determining whether a plaintiff prevailed following settlement of his or her claim, it is immaterial whether a plaintiff received "the exact relief requested as long as it goes toward

achieving the same goal." *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002); *see also Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 912 (3d Cir. 1985) ("Plaintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type."); *P.G.*, 124 F. Supp. 2d at 259-60 (same).

The Board argues that the settlement in this case did not render Plaintiff a prevailing party because the terms of the agreement simply "refined and explained the benefits of M.H.'s [IEP] in greater detail" and did not obligate the Board to provide M.H. with any additional relief. (Def.'s Br. 7.) This Court, however, rejects the Board's characterization of the modifications to M.H.'s IEP following the parties' settlement. The record indicates that Plaintiff, in requesting a due process hearing, sought the amendment of M.H.'s IEP to include various recommendations offered by M.H.'s physicians, specifically: "parental training . . . smaller student/teacher ratio, frequent 1-1 redirection [in the form of a shadow aide], preferential seating, behavioral modification, individual therapy." (Def.'s Br., Ex. C at 6 (Statement of Test. ¶ 19).) Although the settlement did not leave Plaintiff with all the relief desired, Plaintiff's efforts did succeed inasmuch as the Board agreed to amend M.H.'s IEP to, *inter alia*: (1) reclassify M.H. as multiply disabled; (2) specifically define the components of the "Excel" Program and the scope of the instructor's responsibilities toward M.H.; (3) provide M.H. with an "Agenda Book" and homework folder containing his homework assignments; (4) provide M.H. with one-on-one redirection in non-special education classes; (5) require the distribution of a biweekly redirection progress report to M.H.'s parents; and (6) allow M.H. to clean his locker on specific dates and times. (Compl., Ex. A at 2.)

The modifications to M.H.'s IEP resulting from the Board's settlement of Plaintiff's due process claim imposed obligations on the Board to provide M.H. with a greater degree of individualized attention and employ additional methods of behavioral modification. It is apparent that the relief obtained through the settlement meaningfully furthered Plaintiff's purposes in instituting his claim against the Board, and thus this Court cannot agree with Defendant's contention that the modifications were technical or de minimis. Therefore, Plaintiff "'prevailed,' in the sense that there was a material alteration in the legal relationship." *Truesdell*, 290 F.3d at 164.

### B. The Settlement Agreement Was Judicially Sanctioned

After *Buckhannon*, a court may award "attorney's fees . . . based on a settlement when it is enforced through a consent decree." *Truesdell*, 290 F.3d at 165 (citing *Buckhannon*, 532 U.S. at 604). The settlement agreement in *Truesdell* met this requirement because it "(1) contain[ed] mandatory language (e.g., 'The [agency] shall provide . . . '), (2) [was] entitled 'Order,' . . . [and] (3) [bore] the signature of the District Court judge, not the parties' counsel . . . [and] gave [plaintiff] the right to request judicial enforcement of the settlement against [the agency]." *Id*. However, contrary to Defendant's assertion here, *Truesdell* does not stand for the proposition that a settlement agreement must contain each of these indicia of judicial involvement before a plaintiff who did not receive a favorable judgment on the merits can be deemed a "prevailing party." *See John T.*, 318 F.3d at 558 (citing *Truesdell*, 290 F.3d at 165). Administrative consent decrees reflecting an agreement reached by parties prior to an administrative proceeding on the merits entitle a plaintiff who has attained some relief to claim prevailing party status if "the parties' obligation to comply with the terms of the settlement agreement has been made part of

9

the order of dismissal–either by separate provision . . . or by incorporating the terms of the settlement agreement in the order." *A.R. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 78 (2d Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); s*ee also Smith v. Fitchburg Pub. Sch.*, 401 F.3d 16, 26-27 (1st Cir. 2005); *Smyth v. Rivero*, 282 F.3d 268, 283 (4th Cir. 2002).

In *A.R.*, a hearing officer signed an order and stipulation containing the terms of a settlement agreement between one of the plaintiffs in an IDEA action, M.S., and the New York City Department of Education ("DOE"). 407 F.3d at 68-69. A hearing officer also signed a "Statement of Agreement and Order" containing the terms of a settlement between the DOE and another plaintiff, M.L., as well as "boilerplate instructions on procedures for appealing the decision." *Id.* at 69-70. The court held that both M.S. and M.L. were entitled to attorneys' fees on the grounds that the settlements in both cases "evidence the same combination of administrative *imprimatur*, change in the legal relationship of the parties, and judicial enforceability that renders the winner on the merits in an [administrative] decision . . . a 'prevailing party' under the IDEA and *Buckhannon*."[4] *Id.* at 77. *A.R.* distinguished between administrative orders that incorporate the terms of a settlement agreement from orders that merely dismiss the proceedings based on the parties' voluntary agreement to end their dispute, the latter of which do not contain the requisite administrative imprimatur because the "power and

---

[4]The court in *A.R.* did not distinguish between settlement agreements that contain a "judicial imprimatur" (e.g., the approval of a district court judge) and those that contain an "administrative imprimatur" (e.g., the approval of an administrative hearing officer), because both "change[] the legal relationship between the parties: [the administrative order's] terms are enforceable, if not by the [hearing officer] itself, then by a court, including through an action under 42 U.S.C. § 1983." *A.R.*, 407 F.3d at 76.

authority of the administrative agency do not underlie the private settlement agreement." *Id.* at 78; *see also J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 124 (2d Cir. 2002) (holding that an IDEA plaintiff was not a prevailing party because the plaintiff's pre-hearing settlement was not incorporated into the administrative order dismissing plaintiff's case as moot and thus the settlement was not judicially sanctioned).

      Following the Second Circuit's analysis in *A.R.*, it is apparent that the document signed by the ALJ on October 8, 2004 meets *Buckhannon*'s requirement of judicial involvement. The ALJ incorporated the terms of the settlement agreement between Plaintiff and the Board into a signed document, which stated that it was a final decision within the meaning of 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.510. Although the boilerplate language in the document advises Plaintiff that he may write to the agency in the event the Board fails to alter the student's IEP in accordance with the terms of the settlement, it is well established that Plaintiff may also seek enforcement of the agreement by filing suit for breach of contract, *D.R. v. M.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997), or under 42 U.S.C. § 1983, *McClendon v. Sch. Dist. of Phila.*, No. 04-1250, 2004 WL 2440661, at *2 (E.D. Pa. Oct. 29, 2004) (citing *Jeremy H. v. Mt. Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996)). Because the document unambiguously contains the imprimatur of the administrative agency and the document's terms are enforceable in state and federal court, this Court concludes that the document satisfies the judicial involvement requirement of *Buckhannon* and that Plaintiff qualifies as a prevailing party under the IDEA's fee-shifting statute.

### III.     The Fees Requested by Plaintiff Must Be Reasonable in Rate and Quantity

Having determined that Plaintiff is entitled to an award of reasonable expert or consultant fees, the Court's attention turns to the issue of whether the fees claimed by Plaintiff are reasonable.  This reasonableness inquiry encompasses both an analysis of the validity and relevance of the work performed and the appropriateness of the hourly rate charged by the expert or consultant.  Plaintiff in this case has requested fees totaling $14,980.00, on the basis of Total Envolvement's invoice claiming 42.8 hours of work at an hourly rate of $350.00.  Defendant has objected to Plaintiff's fee request, arguing that both the total hours worked and the hourly rate of $350.00 are excessive.

In the present case, Plaintiff has failed to provide any evidence demonstrating that Total Envolvement's $350 hourly rate is within the normal range charged by similarly-qualified consultants in the Jefferson Township area for similar consulting services.[5]  Moreover, Plaintiff has failed to establish the necessity of having Total Envolvement spend 42.8 hours preparing

---

[5] Surprisingly, Total Envolvement's rate seems to have increased $100 per hour since March 2003, when Ms. Edmondson filed a lawsuit, ostensibly on behalf of the parent of a disabled child, seeking fees for work allegedly performed by Total Envolvement with respect to an administrative hearing regarding that child.  *E.R. v. Vineland Bd. of Educ.*, No. 03-1121, 2003 U.S. Dist. LEXIS 26722 (D.N.J. Nov. 10, 2003).  In that action, Ms. Edmondson claimed that her rate was $250 per hour for her services.

Ms. Edmondson never had the opportunity to argue the reasonableness issue regarding the $250 rate she claimed in *E.R.*  Her claim was summarily dismissed early in the action when it was revealed that Ms. Edmondson had no authorization from the disabled child's parent to bring suit, and Ms. Edmondson admitted that she had no agreement with the parent to charge such fees.  *Id.* at *11.  Ms. Edmondson was referred by the court to the New Jersey Committee on Unauthorized Practice of Law.  *See also A.H. v. South Orange Maplewood Bd. of Educ.*, No. 03-4103, 2005 WL 2952349 at *2 (3d Cir., Nov. 7, 2005) (affirming dismissal of case filed by Edmondson on behalf of disabled child and parent, on grounds of Edmondson's unauthorized practice of law).  Should it become clear that Ms. Edmondson has engaged in similar actions in this case, this Court will not hesitate to impose appropriate sanctions.

Plaintiff's case.[6] This omission of evidence was noted by the Board in its opposition papers, yet Plaintiff failed to cure this deficiency in its reply papers, even though the Board had brought the issue to Plaintiff's attention.[7]

On the basis of the limited evidence submitted by Plaintiff in support of the fee request, this Court cannot evaluate the reasonableness of Plaintiff's claim for fees, and has no choice but to deny the motion, although the Court will permit the Plaintiff to refile a properly supported motion for fees and costs. *See S. D. v. Manville Bd. of Educ.*, 989 F. Supp. 649, 656-57 (D.N.J. 1998) (noting that, in the absence of evidence of reasonableness, the "more prudent course is to deny plaintiff's request for attorneys' fees and costs without prejudice to the filing of a properly supported application").

In cases seeking consultants' or experts' fees, the plaintiff bears the burden of producing evidence of the reasonableness of the hourly rate charged by the consultant or expert, as well as evidence establishing the necessity of incurring those charges. *See, e.g.*, *P.G.*, 124 F. Supp. 2d at 267-68. In cases seeking attorneys' fees, the reasonableness of the hourly rate may be

---

[6] For instance, Total Envolvement's invoice includes time spent on "settlement paperwork" or "attending administrative hearings", as opposed to providing expert testimony or specialized consulting services. These entries are invalid, because these services constitute "traditional representation functions" which cannot be compensated when performed by a non-attorney advocate. *See Arons*, 842 F.2d at 62-63.

[7] Plaintiff's reply papers seem to reflect recognition of the reasonableness issue, because Plaintiff appears to demand discovery of the scope and cost of the legal services rendered by the Board's attorneys with respect to this action. (Pl.'s Resp. to Opp'n 2.) However, Plaintiff bears the burden of proving reasonableness. The attorneys' fee information Plaintiff would seek from the Board relates only to fees charged to the Board for work done by qualified attorneys performing specialized legal services, and thus is irrelevant to the question of what may be reasonably charged by Total Envolvement for its consulting/expert services. Total Envolvement is not a legal firm, and Total Envolvement may not be compensated for work performed that constitutes "traditional legal functions." *Arons*, 842 F.2d at 62-63.

demonstrated by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D.*, 989 F. Supp. at 656.  Likewise, in the case of non-attorney consultants or experts, "the hourly rate for experts must be established through affidavits by members of the community with skill and experience that is comparable to the expert in question."  *Riggins v. Millville Bd. of Educ.*, No. 04-3575, 2005 U.S. Dist. LEXIS 16410 at *9 (D.N.J. Aug. 2, 2005).  Based on the foregoing, any renewed motion for fees should include sworn affidavits from non-attorney consultants or experts working in the Morris County area who are unrelated to Ms. Edmondson and Total Envolvement.  These affidavits must demonstrate that the $350 hourly rate charged by Total Envolvement is consistent with the rates charged by unrelated consultants or experts in the relevant area.  Specifically, the affidavits shall include a sworn description of:  1) the location and experience of such consultants or experts; 2) the hourly rates charged by these consultants or experts; 3) any court decisions awarding costs or fees to such consultants and experts; and 4) the hourly rates and total fees approved in any such court-ordered awards to these consultants or experts.

      Furthermore, with respect to proving the necessity of the work for which Total Envolvement is seeking fees, the invoice submitted by Plaintiff is deficient in that it contains only abbreviated entries broadly describing the work alleged to be done on behalf of M.H.  These descriptions lack sufficient detail to permit the Court to evaluate their validity and necessity.  In the refiled motion, Plaintiff should include an affidavit from Ms. Edmondson, attesting under oath to:

1) the number of hours actually worked on behalf of M.H.; 2) any fee arrangement agreed to by C. H. for such work by Total Envolvement; 3) the existence of any written agreement between C.H. and Total Envolvement for services; 4) the existence of any court orders awarding Total Envolvement fees for consulting, expert, or advocacy services (as well as the total amount awarded and hourly rate approved by such court orders); 5) any amounts paid by C.H. to Total Envolvement for services rendered; and 6) a detailed recitation (including description, date and duration) of the tasks performed by Ms. Edmondson or any other person working on behalf of Total Envolvement for which fees are sought.  For example, the invoice submitted by Total Envolvement lists a four-hour charge on July 29, 2004 for "Consult with Parent."  This description is insufficient, as it does not provide detail as to the nature of the consultation, what was discussed, or how this work related to the advancement of M.H.'s case.  Any renewed application for costs and fees should include a more detailed description of each of the tasks performed on each relevant date, and a description of how such tasks relate to M.H's case.

   Plaintiff shall have thirty days from the date of this Opinion and Order in which to submit an amended motion for fees and costs, which shall include the proper support as described in this opinion.  *See, e.g. Remis v. Dep't of Human Svcs.*, 815 F. Supp. 141, 145 (D.N.J. 1993) (denying deficient motion for fees and granting plaintiff thirty days to resubmit fee application with specified supporting affidavits).  Upon the completion of briefing on the resubmitted motion, this Court will contact the parties to schedule a hearing on the motion at the Court's convenience, which hearing may include the taking of testimony on any disputed issues.

*Conclusion*

For the foregoing reasons, Plaintiff's motion for fees and costs is DENIED without prejudice to the resubmission of a properly supported motion for fees and costs within thirty days from the entry of this Opinion and Order.

Newark, New Jersey
Date: December 19, 2005                                          s/ Harold A. Ackerman, U.S.D.J.